Good morning, and may it please the Court, Yasmin Moreno, counsel for Petitioner Polizzi Fonua. The Court can resolve this case by addressing one threshold issue. Which standard should the BIA have applied in reviewing Mr. Fonua's motion to reopen? Fonseca Fonseca v. Garland provides the answer. There is no dispute that under Fonseca Fonseca, when the BIA denies a motion to reopen on the prima facie ground, it should apply the reasonable likelihood standard. Accordingly, it was legal error here for the BIA to have denied Mr. Fonua's motion to reopen on the prima facie ground, and instead apply the higher, would-likely-change standard. Fonseca Fonseca is clear that the remedy for such an error is to remand for the BIA to apply the correct standard in the first instance. And in cases decided since Fonseca Fonseca, this Court has continued to affirm that petitioners are entitled to have the BIA apply the correct standard in the first instance upon remand. Two such examples are Lopez v. Garland and Narzagre v. Garland. Accordingly, petitioner asks that this Court remand the BIA for application of the correct standard in the first instance. So you're correct that the board said, I mean, that the board said, you know, that he hasn't demonstrated that any new evidence would likely change the result, but in a sentence before that, they said he has not indicated how the natural disaster would qualify him for any form of relief. So why shouldn't we read that as essentially a statement that this evidence just isn't relevant at all? I think that is one way to read that sentence. But I would also draw your attention to the last part of that sentence, which, again, says it's making a judgment about whether this evidence would qualify him for any form of relief or protection from removal, which invokes prima facie considerations. So as much as that sentence might suggest that the BIA considered materiality, I would say it equally suggests that the BIA made a determination on prima facie grounds. If we find that the BIA denied the motion to reopen both on prima facie grounds and also based on a lack of new and material evidence, he must be remanded in that case. Yes, this court would still need to remand because the proper standard, or the standard that corresponds to denials on the prima facie ground, as we know from Fonseca Fonseca, is the reasonable likelihood standard. And we know that here it's not disputed that the BIA denied on the would-likely-change standard. Accordingly, it was legal error for it to have applied this higher standard. And if the BIA did deny on both new and material evidence grounds and prima facie grounds, it erred in applying a standard, and the remedy is to remand for application of the correct standard in the first instance. Right, but in the situation that Judge Desai was hypothesizing, that there would have been an error, but wouldn't that error have been harmless? If it's not material, then he loses on that ground, and so it doesn't matter that they made an error on the other person's standard, does it? It does matter, and harmless error would not apply here. This Court's general principle is to leave to the agency the right to determine issues in the first instance, and that's consistent with the fact that this Court's review is limited to the actual grounds relied upon by the BIA. And we know in Fonseca Fonseca that this Court applied those general principles to this situation, which is a situation in which the BIA applied the incorrect standard to a motion to reopen, and there this Court concluded unambiguously that the remedy for such an error is to remand to the BIA. And in fact, in the course of oral argument for Fonseca Fonseca, the question of harmless error also arose, and the opinion that was ultimately issued, again, unambiguously concluded that the proper remedy for such an error is to remand to the BIA for application of the correct standard in the first instance. So why, maybe you could explain, why is this evidence material? What does the volcano have to do with the likelihood of fracture? Yes, this evidence is material under, or this evidence is material in the sense that it's qualitatively different from the evidence that was previously presented. This evidence... That makes it new. That doesn't make it material, right? I mean, he could put in some evidence about, you know, war crimes in Ukraine, and that would be new because it hadn't happened before, but it wouldn't be material to a claim of asylum from Tonga, right? So why is evidence of a volcano, admittedly a volcano in Tonga, but why is that material to an assessment of the likelihood of torture with the conceptual acquiescence of the Tongan government? Right. I would say materiality does involve considerations of whether evidence is qualitatively different. I think the analysis of whether evidence is new is best conceptualized as whether the evidence was previously unavailable, which this evidence undoubtedly is evidence that was previously unavailable, and applying this notion of whether it's qualitatively different, I think, is sufficient to establish that the evidence is material here. Again, it goes towards the worsened medical and living conditions on Tonga and is different from the evidence that he previously presented. And while we would argue that this evidence is material, I don't think that that's the question that's at issue here today. And this court need not address the questions of materiality because what's most important is the standard that the BIA applied and the fact that it applied an incorrect standard here, which that error alone is basis for remand. And I can now spend some time talking about the ways in which we know that the BIA here denied on prima facie grounds, unless you have other questions. But we know that the BIA denied on prima facie grounds here, again, because in looking at the text of the BIA order, we start with this question of whether Mr. Fonera demonstrated prima facie eligibility for the relief sought. Again, the sentence that you highlighted earlier, while it potentially invokes materiality considerations, also invokes prima facie eligibility considerations. And the fact that this was a denial on the prima facie ground is alone sufficient grounds for remand, according to the guidance that this court provided in Fonseca Fonseca. And with my remaining time, I'll bring us back to two separate errors that provide a basis for remand. One such error is the BIA's lack of substantive reasoning in its analysis. The government does not respond to this argument in its brief. The government merely notes that this argument is only applicable if the BIA did deny on the prima facie ground, which, as we've discussed, we think the BIA did deny on that ground. So I would highlight that that argument by the government in opposition is waived. Did you want to reserve any time for rebuttal? Yes. Okay. Maybe now would be a good time. Thank you. Yes. And we'll hear from the government. Ms. Blosser. Good morning, Your Honors. May it please the Court, my name is Kristen Blosser, and I'm here on behalf of the respondent. The petition for review in this case should be denied. The agency did not act arbitrarily, irrationally, or in a manner contrary to law when it denied the motion to reopen based on Petitioner's failure to introduce new, previously unavailable, and material evidence that would likely change the result in his case with respect to his application for protection under the Convention Against Torture. The sole piece of evidence that Petitioner submitted in support of his motion to reopen was a one-and-a-half-page unsworn personal statement, which was largely duplicative of everything he had told the agency previously on the merits. Specifically, he claimed to fear returning to Tonga because he feared that he wouldn't be able to obtain the necessary medical treatment, and he feared being harmed by the family of his second wife, who he attempted to murder. The motion to reopen, again, was nearly entirely duplicative of what he had previously stated. The only new piece of information that he'd included in his declaration supporting the motion to reopen was this reference to a natural disaster which occurred in Tonga in 2022, which the board considered and credited. But Petitioner failed to indicate how his general assertions about a natural disaster would be material to his application for protection under the Convention Against Torture. The issues in this case really come down to— I will address the argument made by a friend on the other side that we really shouldn't reach materiality because remand is appropriate under the standard review that the BIA adopted. You'd agree that under Fonseca Fonseca, the would-likely-change standard applies to discretionary denials, correct? That's correct. Okay, so maybe you can address the language the BIA used adopting those words and whether under—if we were to find that the BIA adopted the wrong standard, then we need not reach materiality and just remand on that basis alone. Well, I think that argument hinges on the underlying assumption that the reason the board denied the motion to reopen here was on the basis of a prima facie eligibility determination. So Fonseca Fonseca addressed the standard that applies to prima facie eligibility. As Your Honor noted, that was the reasonable likelihood standard. But the government's arguing that the reason the board denied the motion to reopen was a separate and independent ground. In other words, the failure to introduce new, previously unavailable material evidence. And the court in Fonseca Fonseca did not address that question. So Fonseca Fonseca does not dictate the result in this case. And the reason that we know that the board did not deny on the basis of prima facie eligibility, there are several reasons. First, in the one statement where the board references prima facie eligibility, that same sentence the board goes on to describe the independent ground for denying a motion to reopen, separate and independent, you have to show new, previously unavailable material evidence. And the board at no point in this decision said it was denying on the basis of prima facie eligibility, unlike in Fonseca Fonseca where the board decision the court was reviewing had language where the board said it was denying based on prima facie eligibility. But the board did say, he hasn't done, the would likely change, it used that phrase. Why did it say that if it wasn't talking about prima facie eligibility? Well, it was addressing this, whether there was new material, previously unavailable evidence. But the standard for materiality isn't would likely change the result, is it? I mean, this court has not addressed that question as to what standard applies to the materiality inquiry. The government's argument is that the board did not err in applying the would likely change standard in this case to the new, previously unavailable material evidence ground. The sentence that my colleague references as indicating the board was looking at prima facie eligibility is this sentence where the board states, moreover, while the respondent makes general assertions in his motion regarding the natural disaster in Tonga, he has not indicated how the natural disaster would qualify for him for any form of relief or protection from removal, nor has he proffered any evidence other than his own statement in support of his contention. I think the operative word in that sentence that really tells us what the board was looking at is that how. The board wasn't saying he didn't show eligibility or that this evidence was sufficient for prima facie eligibility. The board was saying he hasn't explained why or how this evidence that he's talking about, this natural disaster, is relevant to his application for protection under the Convention Against Torture. And in the prior sentences in that paragraph, the board is addressing, the board is emphasizing that it's, what petitioner is presenting at this point, is really duplicative of the kinds of things he said before. The board emphasizes that he appears to be seeking reopening of these proceedings for reconsideration of his application for protection under the Convention Against Torture. It emphasizes that the board had previously addressed these arguments and he's not making any specific arguments that the board aired when it was previously addressing these arguments. So suppose that we were to conclude that the would-likely-change sentence was about prima facie eligibility and was applying the wrong standard. And we also concluded that the passage you just read about how was a materiality determination. What would we do then? If I'm understanding Your Honor correctly, I think this is looking back to Judge Desai's question, whether if the board, what it was doing was prima facie eligibility and materiality. Yes, that's the question. And the government's argument would be that even if the board applied the wrong standard, which we maintain that it did not, this would be harmless error. Because under any, well, first of all, the court need not address that issue because petitioner has not argued that the standard applying to the material new, previously unavailable evidence is anything different than would-likely-change until their reply brief. They didn't advance any argument with respect to what standard was correct in the answering brief. They just said that the court didn't need to address the issue. If I can ask just a slight variation to that question, what if it's that we're not sure what the BIA was saying? Maybe it was about materiality, maybe it was about prima facie, maybe it was both. What should we do if we're not just certain what the BIA was saying? I think here, again, it would be a harmless error because under any standard what petitioner has shown would not show materiality. That is a separate and independent basis that you have to show in order for a motion to reopen to be granted. This court's case law addressing materiality in cases like Mashmabadi, Oyeniran, Malti, all of those cases discuss materiality in the context of showing that there is a qualitative difference in the evidence. And this court has found that there was a qualitative difference when the applicant submitted something that showed individualized relevancy under no standard. Has petitioner here introduced anything that would have showed that this particular natural disaster had not individualized relevancy to his application for protection under the Convention Against Torture? And unless the court has further questions on this issue with my remaining time, I would just note that to the extent that petitioner argues that the board ignored or improperly discounted evidence, that is incorrect. The board specifically references the substance of his declaration and does not discredit evidence in ways like was done in the cases cited by petitioner. And so for the reasons submitted in our briefing and the reasons discussed here, we would ask that the court deny the petition for review. Thank you, Counsel. Rebuttal. Good morning. May it please the court, I'd like to make two points with my time. The first point is that to the extent that the new and material evidence grounds and prima facie grounds seem to be very overlapping, it would make sense that the same standard be applied to both the reasonable likelihood standard, or in any case certainly a lower standard than the what likely change standard that was applied here. And this is consistent with the principles of Fonseca Fonseca, which distinguishes between denials on the discretionary ground, which again are certainly not an issue here, and denials on the prima facie ground, which involves threshold considerations much like materiality. And even if we're not certain which ground was at issue here, what we do know is that the standard that was applied was the what likely change standard, and it was certainly the incorrect standards have applied, so remand is appropriate. Thank you. Thank you. So Ms. Moreno, you were appointed by the court to represent Mr. Fonseca Pro Bono, and the court is grateful for your service, and we thank both counsel for their arguments and the cases submitted. Thank you.
judges: MILLER, LEE, DESAI